**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

JUSTIN R. DOWNING,            )
                              )
       Plaintiff,          )
                              )
v.                            ) Case No. CIV-17-226-RAW-KEW
                              )
COMMISSIONER OF THE SOCIAL    )
SECURITY ADMINISTRATION,      )
                              )
       Defendant.          )

**REPORT AND RECOMMENDATION**

Plaintiff Justin R. Downing (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 31 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as an oil and gas drilling worker/floor hand and motor man/oil changer. Claimant alleges an inability to work beginning October 1, 2013 due to limitations resulting from ruptured discs in the lower back, high blood pressure, insomnia, bipolar disorder, depression, obesity, and borderline diabetes.

### Procedural History

On August 12, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On February 25, 2016, Administrative Law Judge ("ALJ") Luke Liter conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma.  On April 20, 2016, the ALJ issued an unfavorable decision.  On May 9, 2017, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly consider Claimant's credibility; and (2) failing to reach a proper RFC.

### Credibility Determination

4

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, degenerative disc disease of the lumbar spine, conduct disorder with limited prosocial emotions, alcohol abuse, and rule-out marijuana abuse. (Tr. 121). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, the ALJ determined Claimant could lift, carry, push, and pull up to ten pounds frequently and 20 pounds occasionally. He could stand/walk for six hours in an eight hour workday and sit for six hours in an eight hour workday. Claimant could occasionally climb ladders, ropes, or scaffolds. He could occasionally stoop. Claimant could perform simple tasks of one to three steps. He could tolerate incidental contact with co-workers and supervisors, but should avoid public contact. Claimant was found to work best in a setting with limited contact with others and long periods of solitary work. (Tr. 124).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of assembler of electrical accessories, cleaner/polisher, and production assembler. (Tr. 129-30). As a result, the ALJ found Claimant was not under a disability from October 1, 2013 through the date of the decision. (Tr. 130).

Claimant contends that the ALJ failed to properly assess his credibility. Claimant testified that he last worked in October of

2013. (Tr. 143). He experienced back problems where his leg goes numb. He could stand for 15-30 minutes. Claimant had to "walk around sometimes, up and down all day." He has not had surgery on his back. His pain is present all of the time. The leg numbness occurs when he stands and walks and required sitting to ease the pain. He can walk for about ten yards before he has to sit down. (Tr. 145).

Claimant does not drive, although he last drove two or three years ago. He quit driving after he lost his license because of "insurance tickets." (Tr. 146). He does his own laundry and made food for himself. Claimant shoots his guns off of his back porch twice a week. He likes to hunt and fish, although he stated that the last time he engaged in these hobbies was a couple of years ago. (Tr. 147-48).

Claimant stated that he weighs 388 pounds. (Tr. 148). He stated that he quit using marijuana about a year prior to the hearing. He leaves the house on the third and the fifth days of the month. He watches television and switches chairs with his condition. He has a couple of friends and his family who come over to his house. (Tr. 149-50).

Claimant stated that he still has hallucinations. He also has anger problems. If someone looks at him wrong or steps in his way, Claimant testified that he tries to fight them. The last time this

occurred was five months before the hearing when a gun was pulled on him in a road rage incident. (Tr. 150-51).

Claimant testified that he took medication for these problems but still had them. The medication made the conditions better. (Tr. 151). Claimant also took medication for hypertension which made him go to the bathroom eight to ten time a day. He had difficulty sleeping at night, sleeping for about three to four hours per night because he could not get comfortable due to his back. (Tr. 152). He stated that he could only walk for ten yards but he walked in to the court from the parking lot and stated he could walk farther than ten yards. (Tr. 154).

The ALJ determined that Claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence in the record. (Tr. 124-25). The ALJ then proceeded through the medical record and set forth the inconsistencies with Claimant's testimony. (Tr. 125-28). He specifically found Claimant testified he did not hunt or fish but told Dr. Denise LaGrand that he spent his days outside hunting and fishing. He also shot his guns twice a week which was inconsistent with the allegations of limitation. He told Dr. LaGrand that he left his last employment because the business closed not because of his inability to engage in the work. The ALJ also found inconsistency in Claimant's testimony concerning the continued

7

use of marijuana. (Tr. 126).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ substantially complied with the requirements of the regulations and

the inconsistencies he found are substantiated by the record.  No error is found in the credibility analysis.

### RFC Determination

Claimant first contends that the ALJ should have given greater weight to the medical source statement of Frank Smith, PA-C in which he determined Claimant "must periodically alternate sitting and standing to relieve pain or discomfort." (Tr. 636). Claimant contends this statement is supported by the finding of the consultative physician, Dr. John Marlar. Upon examination, Dr. Marlar found Claimant's physical examination was "unremarkable except the patient had decreased flexion at the waist." Specifically, Dr. Marlar noted decreased flexion to 40 degrees for flexion at the lumbosacral. (Tr. 507). The connection between a imposing an RFC limitation of alternating sitting and standing and the medical finding of decreased flexion is lacking. Claimant's attempt to draw such a connection lacks further medical support in the record.

Additional medical evidence indicated Claimant had a normal gait, strength, tone and no joint swelling. (Tr. 476). He reported pain in the lumbar spine that went into his right leg but did not reference any difficulty standing or walking. (Tr. 479).

"[R]esidual functional capacity consists of those activities

9

that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." <u>White v. Barnhart</u>, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. <u>Id</u>. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." <u>Id</u>. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's failure to include an alternating sit and stand requirement in the RFC does not constitute error as such a finding is not supported by medical evidence.

Claimant next contends that the limitation in the RFC to incidental contact with co-workers and supervisors and avoiding contact with the public is not sufficient to address his mental

limitations.  Claimant states that the diagnosis of major depressive disorder, severe, with psychotic features would interfere with his ability to work in a competitive work environment.  The medical record indicates that Claimant was oriented to person, place, and time with a normal mood and affect, normal memory, and normal judgment.  (Tr. 495, 624).  Claimant demonstrated anger and irritability but he characterized his mood as "pretty normal."  (Tr. 603, 605).  His mood was found to be "stable".  (Tr. 607, 609).  He was prescribed medication for his conditions and was "doing very well" on the medications with well-controlled mood and no difficulty tolerating the medications.  (Tr. 624).

Claimant was evaluated by Dr. Denise LaGrand on November 19, 2014.  Dr. LaGrand found his primary issues to be anger and avoidance.  Claimant did not report significant depressed mood or anxiety or other mental health issues.  Dr. LaGrand determined Claimant appeared "to be capable of work tasks of low complexity, and other than temper issues with co-workers and supervisors, should be able to complete work tasks without significant interference from psychological problems."  (Tr. 512).  The restrictions established by the ALJ in the RFC in limiting contact with co-workers, supervisors, and the general public were sufficient to address Claimant's mental restrictions.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE